942 So.2d 939 (2006)
Corey Nathanial YARUSSO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-5523.
District Court of Appeal of Florida, Second District.
November 17, 2006.
*941 James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Corey Yarusso challenges his conviction and sentence for resisting or obstructing an officer with violence, contending that the trial court should have granted his motion for judgment of acquittal because the State failed to prove all of the elements of the offense. We agree and reverse.
The testimony at trial showed that Deputy Cantrell and Corporal Taggart of the Lee County Sheriff's Office were working in plain clothes in a "high-burglary area" on the evening of June 13, 2004. At around 10:45 p.m., the officers saw a pickup truck driving with its lights off through the parking lot of a closed auto dealership. The officers pulled into the parking lot of the dealership, and after parking their unmarked sheriff's truck on the far side of the dealership, Cantrell approached Yarusso, who by this time was "walking in front of a row of cars" on the lot. Cantrell testified that Yarusso's actions were not necessarily unusual because the lights in the dealership lot were on and "we find people at 2:00 in the morning are genuinely shopping that don't want to be bothered by a sales person."
When he approached Yarusso, Cantrell did not identify himself as a police officer, but instead simply asked Yarusso how he was doing. Yarusso calmly replied that he was fine. Cantrell then asked Yarusso whether he worked at the dealership. Yarusso replied, "No, do you work here?" Cantrell said he did not and then asked whether Yarusso was "just shopping." Yarusso replied that he was. At that point, Cantrell asked Yarusso if he had any identification on him. Yarusso replied that he did not but that he had identification in his truck. When Cantrell asked Yarusso if he could see his identification, Yarusso asked, "Well, are you guys cops or something?" At that point, Taggart stepped forward and replied, "As a matter of fact, we are Lee County Deputy Sheriffs," and he pulled out his badge. Yarusso then indicated that he would get his identification from his truck.
Yarusso turned and began walking toward his truck, with the two officers walking slightly behind him. As the three men approached Yarusso's truck, Cantrell walked toward the rear of the truck to get the tag number while Taggart followed Yarusso toward the driver's door. Yarusso opened the driver's door and, after briefly fumbling around by the front seat, jumped into the driver's seat, locked the door, started the truck, and began backing up. At that point, Taggart yelled, "Stop. Don't do that. Stop." However, Yarusso put his truck in drive and sped off, hitting Taggart's hand with the truck's rearview mirror in the process. Following a high-speed chase, Yarusso was arrested and charged with numerous offenses, including resisting or obstructing an officer with violence.
In this appeal, Yarusso contends, and the State does not dispute, that the interaction between Yarusso and the officers was a consensual encounter rather than an investigative detention. Thus, the narrow question in this appeal is whether Yarusso's act of getting into his truck, driving away from a consensual encounter, and *942 hitting a police officer while driving away can support a conviction for resisting or obstructing an officer with violence. We hold under the facts presented here that it cannot.
Section 843.01, Florida Statutes (2004), defines the crime of resisting an officer with violence as follows:
Whoever knowingly and willfully resists, obstructs, or opposes any officer . . . in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree. . . .
Thus, the State must prove that the defendant (1) knowingly (2) resisted, obstructed, or opposed a law enforcement officer (3) who was in the lawful execution of any legal duty (4) by offering or doing violence to his person. State v. Henriquez, 485 So.2d 414, 415 (Fla.1986). In this case, it is undisputed that an act of violence occurred when Yarusso fled from the officers. It is also undisputed that Cantrell and Taggart were law enforcement officers. What is disputed is whether Taggart was "engaged in the lawful execution of a legal duty" when the violent act occurred and whether Yarusso's act of driving away constituted "resisting."
The Florida Supreme Court recently addressed how courts should analyze the question of whether an officer is "engaged in the lawful execution of a legal duty" for purposes of section 843.01. Tillman v. State, 934 So.2d 1263 (Fla.2006). In doing so, the supreme court rejected the State's argument that "section 776.051(1), Florida Statutes (2005), which prohibits the use of force to resist an arrest notwithstanding the illegality of the officer's actions, extends to other types of police citizen encounters." Id. at 1266. Instead, the court held that, in nonarrest cases, "trial courts should rely on the statutory and decisional law governing the particular duty in which the officer is engaged" to determine whether the officer was engaged in the lawful execution of a legal duty. Id. Moreover, to properly apply the "lawful execution" element, "courts must apply the legal standards governing the duty undertaken by the law enforcement officer at the point that an assault, battery, or act of violent resistance occurs." Id. at 1271 (emphasis added).
In this case, the parties agree that Yarusso and the officers were initially engaged in a consensual encounter. The parties also agree that, as a general proposition, a law enforcement officer who engages a citizen in a consensual encounter is engaged in the lawful execution of his or her legal duties. However, the hallmark of a consensual encounter is the citizen's right to either voluntarily comply with the officers' requests or terminate the encounter at any time. Terry v. Ohio, 392 U.S. 1, 31-33, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Popple v. State, 626 So.2d 185, 186 (Fla.1993). Accordingly, when a citizen who is engaged in a consensual encounter with a police officer either verbally ends the encounter or takes some action that unequivocally demonstrates an intent to end the encounter, the consensual encounter ceases. Any effort by the officer to continue to detain the citizen after that point falls outside the lawful execution of that officer's legal duties absent some founded suspicion that the citizen has committed, is committing, or is about to commit a crime. See Tillman, 934 So.2d at 1273 ("The detention of Tillman constituted lawful execution of a legal duty only if the facts known to the officer created a reasonable suspicion either that Tillman was involved in criminal activity or that he was armed and dangerous.").
*943 In this case, when Yarusso got into his truck, locked the door, and started the ignition, he clearly and unequivocally expressed his intention to terminate the consensual encounter. At that point, because Taggart had no reasonable, articulable suspicion that Yarusso was involved in criminal activity, Taggart's effort to continue the encounter by telling Yarusso to stop was improper. Thus, when the alleged "act of violent resistance" occurred as Yarusso drove away, Taggart was no longer engaged in the "lawful execution of his legal duties" vis-à-vis Yarusso.
Turning to the question of whether Yarusso's act of driving away from a consensual encounter constituted "resisting," we note that when there is no basis for a temporary detention of the individual under Terry, a citizen's act of walking away from a police officer cannot, as a matter of law, constitute resisting or obstructing an officer. See B.H. v. State, 505 So.2d 14, 15 (Fla. 3d DCA 1987). This court has repeatedly held that the simple act of fleeing from officers, without more, does not constitute resisting or obstructing an officer. See, e.g., J.J.N. v. State, 696 So.2d 804, 805 (Fla. 2d DCA 1997); F.E.C. v. State, 559 So.2d 413, 414 (Fla. 2d DCA 1990). Instead, an individual is guilty of resisting or obstructing an officer by flight only if he flees while knowing of the officer's intent to detain him and if the officer is justified in detaining him. J.J.N., 696 So.2d at 805.
In this case, Yarusso did, in fact, flee while knowing of Taggart's intent to detain him. However, neither Cantrell nor Taggart articulated any facts to support a legal basis to detain Yarusso pursuant to Terry. Rather, the parties agree that Yarusso and the officers were engaged solely in a consensual encounter. Accordingly, under this court's longstanding precedent, Yarusso's flight from the officers cannot constitute "resisting" or "obstructing" an officer.
Moreover, Tillman requires courts to "rely on the statutory and decisional law governing the particular duty in which the officer is engaged" in determining whether the defendant's actions are sufficient to support a conviction for resisting an officer. 934 So.2d at 1266. Here, the decisional law governing consensual encounters allows the citizen to terminate the encounter at any time and simply walk away. If we were to hold that the act of walking or driving away from a consensual encounter constituted "resisting" or "obstructing," we would criminalize the act that is the very essence of such an encounter. The result would be that any citizen exercising his or her undisputed right to walk away from a consensual encounter would be guilty of the criminal offense of resisting or opposing an officer. We refuse to eviscerate the law on consensual encounters in this manner.
In this case, Yarusso unequivocally ended the consensual encounter before his truck struck Corporal Taggart. Therefore, at the time of the alleged "act of violent resistance," Taggart was no longer engaged in the "lawful execution of a legal duty" vis-à-vis Yarusso. Moreover, Yarusso's act of driving away from a consensual encounter he had terminated cannot be considered "resisting" or "obstructing" the officers when they had no lawful right to detain him. We certainly do not condone Yarusso's actions in this case, and we agree that it was wholly inappropriate for Yarusso to allow part of his vehicle to hit Taggart as Yarusso fled the scene. Yarusso's actions could have supported convictions for certain other crimes had the State properly charged them. However, under the facts presented here, Yarusso's conduct was legally insufficient to support a conviction for resisting an officer with *944 violence. Accordingly, we reverse this conviction and its sentence.
Reversed and remanded.
FULMER, C.J., and THREADGILL, EDWARD F., JR., Senior Judge, Concur.