964 So.2d 833 (2007)
Awilda RODRIGUEZ, Appellant,
v.
STATE of Florida, Appellee.
Nos. 2D05-1929, 2D05-3481.
District Court of Appeal of Florida, Second District.
September 19, 2007.
*835 James Marion Moorman, Public Defender, and Douglas A. Connor, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Chief Judge.
A jury convicted Awilda Rodriguez of battery on a law enforcement officer and resisting an officer with violence, charges that arose from a tragic encounter with a Manatee County Sheriff's deputy who was attempting to arrest Mrs. Rodriguez's husband. She appeals her convictions and an order requiring her to pay costs in case number 2D05-1929; in the consolidated case, 2D05-3481, she challenges the restitution imposed. We reverse on all points.
According to the State's evidence at trial, the incident began with a dispute in a convenience store parking lot involving a store patron's accusation that Mr. Rodriguez had bumped her car with a shopping cart. The convenience store manager, who knew Mr. Rodriguez as a regular customer, had suggested that he leave. Mr. Rodriguez did so. A sheriff's deputy observed the commotion from another convenience store across the street. A bystander told the deputy that Mr. Rodriguez had been involved in a collision with another car and was leaving the scene. The deputy followed in his patrol car as Mr. Rodriguez drove home. He watched Mr. Rodriguez drive through the gate of his fenced yard and saw Mrs. Rodriguez closing the gate.
The deputy got out of his car and attempted to engage Mr. Rodriguez in a conversation. But Mr. Rodriguez, in a profane way, told the deputy to leave him alone, and he began walking away, toward his home. The deputy decided to arrest Mr. Rodriguez for obstructing his investigation of the hit-and-run accident. By this time, Mrs. Rodriguez was attempting to lock the gate with a chain. The deputy grabbed the chain from her hands, threw it on the ground, and pushed through the gate. As he entered the curtilage of the Rodriguezes' property, he felt a shove.
He caught up with Mr. Rodriguez near the front door of the house and took hold of him. As Mr. Rodriguez struggled to escape, Mrs. Rodriguez joined the fray and began striking the deputy. He attempted to stop her attack by using pepper spray. Meanwhile, Mr. Rodriguez broke free and ran into the house. The deputy pursued him inside. At this point, events took a devastating turn. When the deputy entered the house, Mr. Rodriguez attacked him with an axe. The deputy shot Mr. Rodriguez three times, killing him. Mrs. Rodriguez ran inside and began pummeling the deputy. Other law enforcement officers arrived, and one of them arrested Mrs. Rodriguez.

THE CONVICTIONS
Mrs. Rodriguez's trial was held in January 2005. She was convicted of resisting an officer with violence, § 843.01, Fla. Stat. (2003), for her attack on the deputy when he was attempting to detain her husband; and battery on a law enforcement officer, § 784.07, Fla. Stat. (2003), for *836 shoving the deputy as he entered the yard, or for the incident that also resulted in the charge for resisting an officer. See State v. Henriquez, 485 So.2d 414, 415-16 (Fla. 1986). An element of both crimes is that the law enforcement officer must be lawfully executing a legal duty when the obstruction or the battery takes place. § 843.01 (requiring that the officer be "in the lawful execution of any legal duty"); § 784.07(2) (specifying that the officer be "engaged in the lawful performance of his or her duties").
At the time of Mrs. Rodriguez's trial, however, this district's case law essentially made the issue of whether the officer was engaged in the lawful performance of a legal duty irrelevant if the accused had used violence when battering or opposing the officer. The Second District had broadly applied section 776.051(1), Florida Statutes, which precludes the defense of justifiable use of force when resisting an arrest regardless of the legality of the arrest, to encounters between citizens and the police that did not involve arrests. See Lang v. State, 826 So.2d 433, 435 (Fla. 2d DCA 2002); Nesmith v. State, 616 So.2d 170, 171-72 (Fla. 2d DCA 1993); cf. Kaigler v. State, 913 So.2d 1254, 1255 (Fla. 2d DCA 2005) (answering in the negative the question of "whether the illegality of a stop during which a suspect allegedly commits resisting with violence and battery of a law enforcement officer causes a failure of the [lawful execution] elements" of sections 784.07(2) and 843.01), quashed, 944 So.2d 340 (Fla.2006), opinion on remand, 947 So.2d 671 (Fla. 2d DCA 2007). But after Mrs. Rodriguez's conviction and the commencement of this appeal, the Florida Supreme Court rejected the proposition that section 776.051(1) extended beyond an arrest situation to other types of police-citizen encounters. Tillman v. State, 934 So.2d 1263, 1266 (Fla. 2006). Noting that the legislature had placed the element of lawful execution of a legal duty in both section 784.07(2) and 843.01, the court explained that in prosecutions under either statute for crimes committed outside an arrest situation, the State must prove that the officer was acting lawfully. Id. at 1270.
In this case it was undisputed that Mrs. Rodriguez committed her violent acts prior to her arrest, not in connection with the arrest. Therefore, Tillman's clarification of the law applies to this pending case. See Smith v. State, 598 So.2d 1063, 1066 (Fla.1992) (holding that any decision of the Florida Supreme Court "announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final"); see also J.H.M. v. State, 945 So.2d 642, 644 (Fla. 2d DCA 2006) (applying Tillman to a pending case); Yarusso v. State, 942 So.2d 939, 942 (Fla. 2d DCA 2006) (same); State v. Roy, 944 So.2d 403, 406 (Fla. 3d DCA 2006) (same). Accordingly, we must determine whether the State's evidence against Mrs. Rodriguez proved that the deputy was lawfully executing a legal duty at the time of their encounter.[1]
*837 Tillman instructs that when determining whether the evidence proved the "lawful execution" elements of sections 784.07(2) and 843.01, we must apply the "legal standards governing the duty undertaken by the law enforcement officer at the point that an assault, battery, or act of violent resistance occurs." 934 So.2d at 1271; see also Yarusso, 942 So.2d at 942. Therefore, in this case we scrutinize the law governing a police officer's entry into a citizen's residence or onto its curtilage to effect an arrest.
If a law enforcement officer does not have consent, a search warrant, or an arrest warrant, he may not enter a private home or its curtilage except when it is justified by exigent circumstances. Tillman, 934 So.2d at 1272; see also State v. Rickard, 420 So.2d 303, 306 (Fla.1982) (stating that a warrantless search or seizure may not be conducted in a protected area such as a backyard); Glass v. State, 736 So.2d 788, 789 (Fla. 2d DCA 1999). The exigent circumstances exceptions are "few in number and carefully delineated," and they include pursuing a fleeing felon, preventing the destruction of evidence, searching incident to a lawful arrest, and fighting fires. Riggs v. State, 918 So.2d 274, 279 (Fla.2005) (internal citations omitted).
None of these limited exceptions applied in this case. Granted, the deputy entered the Rodriguez property in pursuit of Mr. Rodriguez. But Mr. Rodriguez was not a fleeing felon, nor could the deputy have believed that he was. Rather, the deputy thought that Mr. Rodriguez had left the scene of a motor vehicle accident. Even if this had been true, and even if the supposed accident had caused damage to a vehicle or property, Mr. Rodriguez's illegal flight from the scene would have been punishable only as a misdemeanor. See § 316.061, Fla. Stat. (2003).
Neither was the deputy's entry onto the property justified by his intention to arrest Mr. Rodriguez for obstructing the accident investigation. The deputy testified that he had "walked to the gate and greeted both subjects and asked them . . . just asked them or attempted to talk to them to ask them what was going on." In response, Mr. Rodriguez told the deputy to get off his property and began walking toward the house. At that point, Mr. Rodriguez had not committed an obstruction because the deputy had only attempted to engage him in a consensual citizen encounter. Mr. Rodriguez was under no obligation to remain and talk unless or until the deputy communicated an intention to detain him. See Yarusso, 942 So.2d at 943. But even if the deputy had done so, the offense of obstructing an officer in the performance of his legal duty is only a misdemeanor. See § 843.02.
In Johnson v. State, 395 So.2d 594, 596 (Fla. 2d DCA 1981), we held that law enforcement has no authority to enter a building to make a warrantless arrest for a misdemeanor, especially when the building to be entered is a person's home. Thus, even assuming Mr. Rodriguez committed a misdemeanor in the deputy's presence by refusing to cooperate with his investigation, the deputy could not legally enter his home to arrest him for that crime. As was the case in Tillman, the deputy here was *838 unlawfully inside the Rodriguezes' fenced yard and residence when he scuffled with Mrs. Rodriguez. See Tillman, 934 So.2d at 1272 ("The zone of protection under the Fourth Amendment extends to the curtilage of a home, which includes a fenced or enclosed area encompassing the dwelling.").
As we have seen, the State's evidence did not merely fail to prove that the deputy was engaged in the lawful performance of a legal duty; it affirmatively proved the contrary. Because the State's proof did not establish the crimes for which Mrs. Rodriguez was convicted, we must reverse her convictions. See F.B. v. State, 852 So.2d 226, 230-31 (Fla.2003). While the evidence did not prove that there was an unlawful battery on a law enforcement officer under section 784.07, it did establish the lesser included crime of simple battery under section 784.03(1). Therefore, we remand with directions to the circuit court to adjudicate Mrs. Rodriguez guilty of that crime, a first-degree misdemeanor. Cf. Roy, 944 So.2d at 406-07. Concerning the charge of obstructing a law enforcement officer with violence, the evidence failed to prove either that crime or its lesser included offense, obstructing an officer without violence pursuant to section 843.02. On remand the circuit court shall enter a judgment of acquittal of that charge.

THE RESTITUTION ORDER
The court ordered Mrs. Rodriguez to pay $29,341.56 in restitution for the injuries the deputy suffered as a result of her husband's axe attack. At the hearing, defense counsel argued that the court did not have jurisdiction to impose restitution because Mrs. Rodriguez had filed an appeal of her convictions. Alternatively, counsel asserted that the State had not shown the necessary nexus between Mrs. Rodriguez's crimes and the deputy's injuries. No evidence was presented, but the court ordered restitution in the amount of the deputy's insurer's claim.
As Mrs. Rodriguez maintained, the circuit court lost jurisdiction to enter the restitution order when she filed her notice of appeal. See Fuller v. State, 786 So.2d 1269, 1269 (Fla. 2d DCA 2001); see also Marro v. State, 803 So.2d 906, 907 (Fla. 4th DCA 2002). Accordingly, we reverse the order.
Generally, when we strike an order of restitution the trial court may hold a new hearing on remand to determine the proper amount of restitution and enter a new order. See Fuller, 786 So.2d at 1269; see also Marro, 803 So.2d at 907. Of course, the court may do so in this case. But we note that our reversal of Mrs. Rodriguez's conviction for obstructing a law enforcement officer will change the complexion of the hearing, particularly as it relates to the expenses associated with the injuries Mr. Rodriguez inflicted on the deputy. In the initial hearing the State posited that Mrs. Rodriguez's interference with the deputy's effort to detain her husband allowed Mr. Rodriguez to escape, to obtain the axe, and to wound the deputy. Thus, the State maintained that Mrs. Rodriguez's obstruction offense had a significant relationship with the deputy's injuries and restitution for the cost of his medical treatment was proper under section 775.089(1)(a)(1), Florida Statutes (2003) (stating that restitution shall be ordered for the victim's "[d]amage or loss caused directly or indirectly by the defendant's offense").
Whether Mrs. Rodriguez's obstruction of the deputy had a significant relationship to the deputy's injuries is debatable under the test articulated in Schuette v. State, 822 So.2d 1275, 1282 *839 (Fla.2002) (equating the significant relationship test with the requirement of proximate causation between the criminal act and the resulting damages, and noting that both a "but for" causation requirement and a significant relationship requirement are included in the analysis). But we need not reach that issue because we have reversed her conviction for obstruction. While we have directed the court to enter a judgment for simple battery, any restitution must be limited to damages caused directly or indirectly by that crime.

THE ORDER ON COSTS
We also reverse the order imposing costs on Mrs. Rodriguez. A significant portion of the costs were assessed because she was found guilty of felonies. Owing to our reversal of the felony convictions, some of those costs may not apply. We also note that the form costs order employed by the circuit court does not contain any citations to statutory authorities for the costs imposed. On remand, the circuit court shall revisit the imposition of costs in light of this decision. Any cost imposed shall be supported by a citation to the statute authorizing it either orally or in the written costs order. See Miller v. State, 912 So.2d 1282, 1283 (Fla. 2d DCA 2005).
Mrs. Rodriguez raised a number of issues concerning the original costs assessment in a motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), but the circuit court denied the motion. Because we are reversing the order for other reasons, we do not address the various contentions made in her motion. Mrs. Rodriguez is free to argue any of them, if applicable, on remand.

CONCLUSION
We reverse Mrs. Rodriguez's conviction for battery on a law enforcement officer and remand to the circuit court to enter a conviction for the lesser included offense of battery under section 784.03(1). We reverse Mrs. Rodriguez's conviction for obstructing a law enforcement officer with violence and direct the circuit court to enter a judgment of acquittal on that charge. We reverse both the restitution order and the order imposing costs and remand with directions to conduct new hearings on those matters in light of this decision.
SILBERMAN and LaROSE, JJ., Concur.
NOTES
[1] Mrs. Rodriguez concedes that her trial counsel did not move for a judgment of acquittal on this basis. It is, however, fundamental error to convict a defendant when the State has failed to prove an element that is essential to the commission of the crime. F.B. v. State, 852 So.2d 226, 230-31 (Fla. 2003) (stating that when the evidence is totally insufficient as a matter of law to establish the commission of a crime, that argument need not be preserved. "Such complete failure of the evidence meets the requirements of fundamental error. . . ."); see also Kirschner v. State, 915 So.2d 624, 625 (Fla. 2d DCA 2005); M.C.M. v. State, 754 So.2d 844, 845 (Fla. 2d DCA 2000); Hornsby v. State, 680 So.2d 598, 598 (Fla. 2d DCA 1996). While Smith, 598 So.2d at 1066, dictates that a defendant "must have timely objected at trial if an objection was required to preserve the issue for appellate review," such an objection is unnecessary if the error was fundamental. Cf. Leveritt v. State, 896 So.2d 704, 705 n. 2 (Fla.2005) (remanding for a determination of whether fundamental error existed, but implying that if the error were fundamental, Smith would require that the change in the law be applied to the pending case).